```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE VEGA,                      :
                                :
      Plaintiff                 :
                                :   CIVIL NO. 1:CV-04-2398
      vs.                       :
                                :   (Judge Caldwell)
UNITED STATES DEPARTMENT OF     :
JUSTICE, ET AL.,                :
                                :
      Defendants                :
```

M E M O R A N D U M

I.    *Introduction.*

Jose Vega, an inmate formerly housed at Lewisburg United States Penitentiary ("USP-Lewisburg"), Lewisburg, Pennsylvania,[1] filed this pro se civil rights action.  Vega avers that on March 14, 2003, while housed at USP-Lewisburg, he assaulted Associate Warden Sniezek with a razor blade during the noon meal.  (Doc. 1, Complaint; Doc. 21, Amended Complaint).  In retaliation for this attack, Defendants assaulted him and then denied him medical care for his injuries.  Vega seeks monetary relief from the following defendants:  Warden D. Scott Dodrill, Lt. Knox, Corrections Officer ("CO") Fisher, CO Heaganbach, CO

---

[1]  Vega is currently housed at USP-Florence, Administrative Maximum (ADX), Florence, Colorado.

Hummer, CO Edinger, Physician Assistant Navarro, Dr. Noone, and Dr. Bussanich.

Presently before the Court is Defendants' Motion for Summary Judgment premised upon Vega's alleged failure to properly exhaust his available administrative remedies.  Having carefully considered the matter, we find that Vega's claims are procedurally defaulted as he failed, without excuse, to timely file an Administrative Remedy Request pursuant to the procedure set forth in the Bureau of Prisons' ("BOP") Administrative Remedy Program challenging his alleged mistreatment.  Accordingly, Defendants' motion for summary judgment will be granted.

II.    *Procedural History.*

Vega filed this action on November 1, 2004, (doc. 1), and then filed a supplemental pleading on November 29, 2004. (Doc. 16).  After receiving an extension of time to answer or otherwise respond to the Complaint, Defendants filed their Motion for Summary Judgment, supporting brief and exhibits.  (Docs. 35 and 36).  Vega then filed an extension of time to respond to Defendants' motion.  (Doc. 41).

On May 31, 2005, Vega filed a Motion for Summary Judgment.  (Doc. 43).  At the same time, Vega filed "Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment"

(doc. 44), and "Plaintiff's Opposition and Counter Defense to
Defendants' Motion, Brief, Affidavit and Exhibits" (doc. 45).
Vega has not filed a brief in support of his Motion for Summary
Judgment.[2]  Defendants filed a response to Vega's motion, noting
that his submissions in connection with that motion were briefs
in opposition to their motion for summary judgment.  (Doc. 46).
More than a month later, after Vega was transferred back to the
Florence facility, Vega submitted his "Exhibits in Support of his
Brief Regarding Exhaustion of Remedies."  (Doc. 50).  Defendants
then filed a Response to his submission.  (Doc. 51).  On August
23, 2005, Vega filed his "Response to Defendants' Response to
File Opposition to his Exhibits Regarding Exhaustion of
Administrative Prison Remedies."  (Doc. 52).  Aware of Vega's
claims that he had difficulty obtaining his legal materials and
legal research items while at the Springfield medical facility,
we will consider all of Vega's opposition materials (docs. 44,
45, 50 and 52) and defendants' responses when resolving this
motion.

---

[2]   As Vega has failed to file a brief in support of his
Motion for Summary Judgment (doc. 43), it will be deemed withdrawn.
*See* M.D. Pa. Local Rule 7.5.

III.   *Background.*

   A. *Events of March 14, 2003.*

   On March 13, 2003, at approximately 11:24 a.m., Vega assaulted USP-Lewisburg's Associate Warden Sniezek with a razor blade during the noon mainline meal.  (Doc. 1, Complaint, and 21-2, Plaintiff's Exhibits in Support of his Amended Complaint). After temporarily holding staff at bay, Plaintiff was subdued and placed in ambulatory restraints and taken to the Lieutenant's office.  Defendants Fisher, Hagenbuch, Edinger, Hummer, and Knox held Vega down while Dr. Bussanich injected him with an unknown substance rendering him physically and mentally incapacitated. (*Id.*)  Vega was stripped naked and "assaulted by prison staff for a duration of at least an hour."  (Doc. 1 at ¶ 5).  Plaintiff sustained a broken rib, body and head contusions, loss of hearing in his left ear and several abrasions as a result of the attack. (*Id.* at ¶ 6).

   After the assault, at approximately 11:45 a.m., Vega was escorted to the prison's Health Services Department and examined by Dr. Bussanich.  (Doc. 21-3, Inmate Injury Assessment and Followup Report).  Although Dr. Bussanich saw the extent of Plaintiff's injuries, he failed to treat or properly document them.  (Docs. 1 and 21).  Vega was then taken to the Special Housing Unit.  (Doc. 21-2, p. 9).  PA Navarro examined Vega at

-4-

approximately 12:00 p.m.  (*Id*. at p. 10).  Navarro also ignored, overlooked and failed to document Vega's injuries denying him proper medical treatment.

Later that day Vega was transported from USP-Lewisburg to neighboring USP-Allenwood.  Upon reception staff photographed and documented Vega's injuries.  At approximately 2:45 p.m. Plaintiff was medically evaluated and several abrasions were noted on various parts of his body.  One contusion and hematoma were also noted on the right side of his forehead.  (*Id*. at pp. 8 - 14).  Minor first aid was administered.  (*Id*. at p. 12).

  *B. Vega's Efforts to Exhaust his*
   *Administrative Remedies.*

Immediately upon his transfer to USP-Allenwood Vega was placed on "suicide status."  (Doc. 44, Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment).  He remained on suicide status until March 25, 2003, when he was transferred to the United States Medical Center for Prisoners, Springfield, Missouri, for mental-health evaluation and treatment.  While there, he wrote a letter to the BOP Legal Department complaining of his recent assault but received no response.  Plaintiff also "made informal efforts to execute his complaints by discussing them with 'Springfield's' Correctional Counselor, Mr. Cunningham, who advised Vega that because he was

seeking compensation – he (meaning Vega) would have to file a Federal Tort Claim." (Doc. 44, Plaintiff's Rebuttal to Defendant's Motion for Summary Judgment, at ¶ 13; and Doc. 45-1, Plaintiff's Opposition and Counter Defense to Defendants' Motion, Brief, Affidavit and Exhibits, p. 8). Plaintiff returned to USP-Allenwood on June 25, 2003. (Doc. 44).

On or about July 3, 2003, Vega received a "fabricated" misconduct for assaulting USP-Lewisburg's Associate Warden. (Doc. 44). On July 5, 2003, Vega was charged in the Middle District of Pennsylvania with assaulting a corrections employee. These proceeding terminated in February 2005 after Vega plead guilty to the charge.[3]

From July 18, 2003, through October 23, 2003, while housed at USP-Allenwood, Vega filed various grievances challenging a variety of issues. (*Id*. at ¶ 17). In March 2004, Vega filed an administrative tort claim with the BOP regarding the March 14, 2003, assault and his injuries. His claim was denied in August 2004. (*See* Docs. 44 and 45-1).

On April 5, 2004, Plaintiff was transferred from USP-Allenwood to the Administrative Maximum security facility in

---

[3] The Court takes judicial notice of the docket in *United States v. Vega*, 4:CR-03-0200 (M.D. Pa.) (McClure, J.). Vega received a 188-month sentence to run consecutive to his present sentence of life imprisonment.

Florence, Colorado.  (Doc. 44).  It was here that he "learned that he had to file administrative remedies in compliance with the Prison Litigation Reform Act, regardless of the fact that relief sought could not be granted."  (Doc. 52, Plaintiff's Response to Defendants' Response to Filed Opposition to his Exhibits Regarding Exhaustion of Administrative Remedies, ¶ 6). In July 2004, upon the advice of fellow inmates, Vega filed an Informal Resolution Attempt, or BP-8, claiming he was assaulted and denied medical attention.  He cited his emergency transfer from USP-Lewisburg to USP-Allenwood, his transfer to the Springfield Medical Center, and then his pending criminal prosecution to suggest that his "in transit" status "had foreclosed [him] from initiating this grievance process with the principal place (USP-Lewisburg)."  (*See* Doc. 50, Vega's Informal Resolution Form dated July 27, 2004, Attachment.)  Since Vega sought monetary damages, he was advised to submit a tort claim. (*Id.*)

Vega then filed a Request for Administrative Remedy, the next step in the BOP's administrative remedy process.  It was assigned number 346152-F1.  (*See* Doc. 50, p. 14, Administrative Remedy Request No. 346152-F1).  The Administrative Remedy Coordinator rejected the request as untimely, noting that such a request must be received within 20 days of the event complained

-7-

of.  (*See* Doc. 50, p. 13, Rejection Notice of Administrative Remedy No. 346152-F1).

On August 9, 2004, Vega filed an appeal to the Regional Administrator.  He protests the rejection of his administrative request as untimely "even after I'd given reasonable cause for the delay." (Doc. 50, p. 19, Regional Administrative Remedy Appeal No. 346152-R1).  Vega states that "a '330' emergency transfer from USP-Lewisburg to USP-Allenwood on March 14, 2003, coupled with an immediate transfer to Springfield Medical Center, an impending criminal prosecution and subsequent indictment plus [him] being on 'transit' had foreclosed [him] from initiating this grievance against prison guards and medical staff for 'excessive use of force, improper & inadequate medical treatment and a deliberate indifference." (*Id.*)  Vega's Administrative Remedy Appeal was rejected as untimely on September 1, 2004. (*See* Doc, 50, p. 18, North Central Regional Office Administrative Remedy Rejection Notice No. 346152-R1.)

On September 9, 2004, Vega filed a Central Office Administrative Remedy Appeal.  (*See* Doc. 50, p. 21).  Again Vega explains the "reasonable cause" for his delay in filing his administrative remedy request "[o]n account that [he] was on 'transit' status, an impending prosecution and indictment - I was foreclosed from initiating a timely filed grievance against

-8-

prison guards and medical staff." (*Id*.)  On September 30, 2004, the BOP Central Office Administrative Remedy Coordinator rejected the administrative remedy as untimely.  (*Id*. at p. 20).

Vega asserts that he has presented his administrative remedy request related to the March 2003 assault and denial of medical care to each level of the BOP's grievance system.  (Doc. 44, Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment, ¶ 43).  Plaintiff claims that he advanced reasonable excuses for the late filing of his administrative remedy.  (Doc. 52).

In opposition to Defendants' Motion for Summary Judgment, Vega adds an additional rationale for the untimely filing of his administrative remedy not previously advanced elsewhere.  Plaintiff submits an affidavit affirming that his Corrections Counselor at the Springfield Medical Center "mislead him to believe that his grievance could not be remedied under the Administrative Remedy Process because [he] was seeking compensation, and therefor, [he] was referred to the Federal Tort Claim Act.  Then, after learning of the requirements of the Prison Litigation Reform Act," he filed his Informal Resolution Form and proceeded to fully exhaust his administrative remedies.  (*Id*. at pp. 7 - 8).

IV.     Standard of Review.

        Summary judgment will be granted if the record
establishes that "there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment as a
matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477
U.S. 317, 324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986).
Rule 56(c) imposes a burden on the moving party to point to an
absence of evidence supporting the nonmoving party's case.
*Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the
moving party has met this burden, the burden then shifts to the
non-moving party.  The non-moving party "must do more than simply
show that there is some metaphysical doubt as to the material
facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S.
574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  Moreover,
he may not simply "replace conclusory allegations of the
complaint or answer with conclusory allegations of an affidavit."
*Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct.
3177, 3188, 111 L.Ed.2d 695 (1990)(citing *Anderson v. Liberty
Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d
202 (1986)).  Rather, he must "set forth specific facts showing
that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).
Unsubstantiated arguments made in briefs are not considered

evidence of asserted facts.  *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.  In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 247-248, 106 S.Ct. at 2510.  Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita*, 475 U.S. at 5887, 106 S.Ct. at 1357(citations omitted).

*V.    Discussion.*

Defendants claim they are entitled to summary judgment as Vega has failed to properly exhaust his administrative remedies.  The BOP rejected as untimely Vega's administrative

-11-

remedy, filed over one year after the March 2003 events.  Vega

counters that prison official initially mislead him as to the

availability of his administrative remedies.  He claims that in

response to his request for monetary compensation for the alleged

wrongdoings by defendants he was advised to file a tort claim

which cannot be processed under the BOP's Administrative Remedy

Program.

     *A. The Exhaustion Requirement.*

     Under the Prison Litigation Reform Act ("PLRA"),

exhaustion of administrative remedies is required for all actions

concerning prison conditions brought under federal law.  *See* 42

U.S.C. § 1997e(a); *Spruill v. Gillis,* 372 F.3d 218, 227 (3d Cir.

2004).  This "exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or

some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122

S.Ct. 983, 992, 152 L.Ed.2d 12, 26 (2002).  A prisoner must

exhaust all available administrative remedies before initiating a

federal lawsuit.  *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct.

1819, 1824, 149 L.Ed.2d 958 (2001).  Exhaustion is required even

if the administrative process could not provide the prisoner with

the monetary relief he seeks.  (*Id.*)  The PLRA "completely

precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). Exhaustion of administrative remedies under the FTCA does not satisfy the exhaustion requirement of section 1997e(a). *See Brockett v. Parks,* 48 Fed. Appx. 539, 540-41 (6th Cir. 2002)(nonprecedential).

The PLRA requires not only technical exhaustion of the prison's administrative remedy program, but also substantial compliance with its procedural requirements. *Spruill*, 372 F.3d. at 228, 231. To determine whether a prisoner has properly exhausted administrative remedies, the court looks to the prison's grievance procedure, not federal law. *Id.* at 231. A prisoner's failure to follow the procedural requirements of the administrative remedy process bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Id.* at 227-32.

The PLRA, however, does not require exhaustion of all remedies. Rather, it requires exhaustion of such administrative remedies "as are available." 42 U.S.C. § 1997e(a); *Camp v. Brennan,* 219 F.3d 279, 281 (3d Cir. 2000). The availability of administrative remedies to a prisoner is a question of law. *See Ray v. Kertes,* 285 F.3d 287, 291 (3d Cir. 2002). An administrative remedy may be found to be unavailable where a

-13-

prisoner is prevented by prison authorities from pursuing the prison grievance process. *See e.g., Camp*, 219 F.3d at 280-81; *Brown v. Croak,* 312 F.3d 109, 112-113 (3d Cir. 2002).  The exhaustion requirement is subject to estoppel, waiver, and special circumstances which may excuse a prisoner's failure to comply with the prison's administrative remedy program.  *Ray v. Kertes*, 130 Fed. Appx. 541 (3d Cir. 2005)(*citing Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004); *Giano v. Goord,* 380 F.3d 670 (2d Cir. 2004)).

   *B. BOP Administrative Remedy Program.*

          The Federal Bureau of Prisons has a three-step administrative process for an inmate to seek review of any aspect of his confinement.  The avowed purpose of the program "is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."  28 C.F.R. § 542.10(a).  The BOP Administrative Remedy Program first requires that an inmate initially attempt informal resolution (a BP-8) of the matter.  28 C.F.R. § 542.13(a).  In the event an informal resolution is not reached, he can start the formal administrative process by submitting a written Request for Administrative Remedy (a BP-9) to the Warden.  *See* 28 C.F.R. §§ 542.13 - 542.14.  If dissatisfied with the Warden's response, the inmate may appeal

-14-

(by way of a BP-10) to the appropriate Regional Director.  *Id*. at § 542.15.  If the response of the Regional Director is not satisfactory, the inmate may then appeal (by way of a BP-11) to the Central Office of the Federal Bureau of Prisons, which is the final administrative appeal in the Bureau of Prisons.  (*Id*.)

The BOP Administrative Remedy Program imposes a twenty-calendar day period for the initial submission of a grievance. 28 C.F.R. § 542.14(a).  Extensions are authorized where the prisoner shows that he was prevented from submitting the request within the established time frame.  Valid reasons for a delayed filing may be where an inmate is in transit and separated from the documents needed to prepare the Administrative Remedy Request, the inmate is physically incapable of preparing a request, an unusually long period of time for informal resolution attempts, or staff somehow interfered with the inmate's attempt to file within the requisite period.  28 C.F.R. § 542.14(b).

*C. The Merits of Defendants' Exhaustion Defense*.

Defendants argue Plaintiff failed to exhaust his available administrative remedies without valid justification. Their attack is fourfold.  First, Plaintiff's Request for Administrative Remedy addressing the assault of March 14, 2003, was filed more than a year late.  Second, Vega failed to obtain an extension of time, as permitted by the BOP's Administrative

-15-

Remedy Program, to file his administrative remedy out of time.

Third, Plaintiff's "in transit" status did not prevent him from

filing a timely administrative remedy request.  And finally, the

filing of a tort claim did not preclude Vega from utilizing the

Administrative Remedy Program.  We will address each argument in

turn.

> 1.   *Vega's July 2004 Request for*
>      *Administrative Remedy is Untimely.*

Vega's July 2004 Request for Administrative Remedy was

rejected as untimely; therefore, he is precluded from bringing

this *Bivens* action.  The events complained of in this case

occurred on March 14, 2003.  Absent "a situation which prevented

[Vega] from submitting" an administrative remedy within twenty

days of that date, or April 3, 2003, claims arising from those

events are procedurally defaulted and subject to dismissal.

*Spruill v. Gillis,* 372 F.3d 218 (3d Cir. 2004).

> 2.   *Vega did not Seek an Enlargement of*
>      *Time to File his Administrative*
>      *Remedy.*

"Where an inmate demonstrates a valid reason for delay"

in filing a grievance, the BOP's Administrative Remedy Program

provides for an extension of the 20 day filing period.  28 C.F.R.

§ 542.14(b).  The parties do not dispute that Vega did not seek

an enlargement of time to file his grievance related to the

events of March 2003.  Vega first submitted a BP-8, an informal

resolution form, July 27, 2004, sixteen months after the event.

Absent a finding of special circumstances, or staff interference,

Vega has not asserted a valid reason for not complying with the

procedural requirements of timely filing, or for failing to

request an enlargement of time to file his administrative remedy

request.  *Ray*, 130 Fed. Appx. at 544.

> 3.   *Vega's "In Transit" Status did not*
>      *Hamper his Ability to File A Timely*
>      *Administrative Remedy.*

Vega did include an explanation for his untimely

pursuit of his administrative remedies in his Informal Resolution

Form, or BP-8.  Vega attributed his untimely filing to his

various institutional transfers coupled with his then impending

criminal prosecution for the assault of Assistant Warden Sniezak,

"foreclosed [ing him] from initiating [his] grievance process."

(Doc. 50 at p. 3).

Plaintiff, however, omitted any explanation for his

tardy filing in his formal Request for Administrative Relief.  As

defendants' point out, Vega's failure to include this issue in

his formal administrative request precluded the institution from

ever having the opportunity to review its merits.  Even though

Vega includes his "reasonable cause for [the] delay" in his

-17-

appeal to the Regional Director, we agree with defendants the claim is procedurally defaulted.  (*Id*. at p. 19).

Assuming *arguendo* that the BOP did consider Vega's rationalization for his untimely filing, contrary to Vega's assertion, there is no requirement that the BOP had to accept his excuse as "reasonable cause" for his non-compliance with the 20 day filing period.  "28 C.F.R. § 542.14(b) vests the discretion to grant an extension in filing time with officials within the Bureau of Prisons, not an individual inmate."  *Patel v. Fleming*, 415 F.3d 1105, 1110 (10th Cir. 2005).  While Vega may believe his various transfers and pending criminal prosecution may be "reasonable cause for [his] delay" and mitigated his non-compliance with the procedures of the BOP's Administrative Remedy Program, Defendants are not required to accept his reasons and excuse his untimely filing.  Highly relevant to our consideration of Vega's "in transit" justification for his untimely filing is that, as Defendants point out and Vega concedes, Plaintiff filed several other (non-related) administrative remedies between the same relevant time frame in which he should have filed his grievance related to the March 14, 2003, events.  This fact alone clearly defeats Vega's argument that his "in transit" status somehow prevented him from filing a timely grievance.  Based on the record before the Court, it is clear that during the relevant

-18-

time frame Vega was aware of the BOP's Administrative Remedy
Program, utilized it, and could have filed a timely
administrative request or at least a request for an enlargement
of time to do so.

> 4.   *Vega's Claim that Prison Officials*
> *Mislead him to Believe his*
> *Administrative Remedies were*
> *Unavailable is Unjustified.*

In *Brown v. Croak*, 312 F.3d 109, 112-113 (3d. Cir.
2002), the Third Circuit held that for the purposes of compliance
with the PLRA, prisoners are only required to exhaust those
administrative remedies that are available to them and that
circumstances may exist that amount to justification for not
complying with administrative procedural requirements.  Recently,
in *Ray v. Kertes*, 130 Fed.Appx. 541, 544 (3d Cir. 2005), the
Third Circuit confirmed that special circumstances may exist
where, although administrative remedies were available, prison
officials may be estopped from asserting the non-exhaustion
affirmative defense, thus excusing a prisoner's non-compliance
with the administrative remedy requirement.  Such determinations
are factual and most appropriately made at summary judgment.

In this case Vega claims he was "mislead" or otherwise
prevented from filing a timely administrative remedy in March
2003 based on a discussion he had with his Corrections Counselor,

Mr. Cunningham.  Based on the summary judgment record before us, we disagree that Vega's conversation with Cunningham, alone, constitutes the requisite special circumstances or justification as envisioned in *Ray*, supra, or *Brown,* supra.

First, nowhere in Vega's Informal Resolution Form, or in any of his appeals of the rejection of his July 2004 Administrative Remedy Request as untimely, does Vega suggest that he was "mislead" by Corrections Counselor Cunningham "that his grievance could not be remedied under the Administrative Remedy Process". (*See* Doc. 50, and Doc. 52, p. 7).  Where and when Vega sought to justify his tardy filing before the BOP, he raised only the issue of his many transfers as the impediment to his filing. Next, Vega consistently states that he told the Corrections Counselor that he sought monetary compensation for the March 14, 2003, assault, and that his counselor verbally advised him to file a tort claim.  As defendants correctly note, the information provided in response to Vega's statement is correct - a tort claim pursued via the statutorily mandated exhaustion process, which is different than that provided by the Administrative Remedy Program, is the appropriate means to obtain monetary compensation for personal injuries due to staff negligence.  The clear language of the BOP's Administrative Remedy Program clearly states the same.  While its purpose "is to allow an inmate to

-20-

seek formal review of an issue relating to any aspect of his/her own confinement," it expressly disavows that it supplants the statutorily mandated procedures that must be filed by a prisoner seeking to pursue a Federal Tort Claim Act ("FTCA").  (*Id.*)  Mr. Cunningham's response simply underscored this distinction for Vega.  Important to our consideration of this matter is that the Counselor's advice did not preclude or otherwise prohibit Vega from availing himself of the Administrative Remedy Program for the purpose of preserving his right under the PLRA to file a civil rights action in the future.  Nor was the Counselor obligated to advise Vega of the same.  Vega's admission that it was only "after learning of the requirements of the Prisoner Litigation Reform Act", in July 2004, did he initiate his July 2004 administrative remedy is extremely relevant to our findings. Vega is clearly acknowledging that he previously was unaware of the PLRA's exhaustion requirements until July 2004.  Based on such a statement and the lack of any further impediment erected by Cunningham or other BOP officials preventing Vega from filing this particular grievance in a timely fashion when he was able to file others, no fair-minded jury could conclude that Vega was duped, mislead, or otherwise prevented from filing a timely administrative remedy by any BOP official, including Mr. Cunningham.  Additionally, there is nothing in the Administrative

Remedy Program (or the FTCA) that states that if a prisoner files a FTCA claim, he is prohibited from also filing a similarly based Administrative Remedy Request.  And, as noted, "[t]he filing of an administrative tort claim by a prisoner does not excuse the prisoner's failure to meet the separate exhaustion requirements for a *Bivens* claim under the PLRA."  *Nwaokocha v. Sadowski,* 369 F.Supp.2d 362, 368 (E.D.N.Y. 2005).

      Finally we note that the PLRA's exhaustion requirement is mandatory and "completely precludes a futility exception" based on a claim that the administrative process could not provide the prisoner with the monetary relief he seeks.  *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).  Vega elected to file a tort claim to pursue monetary compensation from defendants.  He could have, but did not, pursue his available administrative remedies for the purpose of filing this action.  Vega's ignorance of the PLRA's exhaustion requirements does not relieve Vega of his obligation to properly exhaust the available administrative remedies.  *See Jones v. Morton*, 195 F.3d 153, 160 (3d Cir. 1999)(a petitioner's "misunderstanding" of appellate rights is not "cause" for procedural default).

*VI.   Conclusion.*

Based on the summary judgment record before us, Vega has failed to present any evidence from which a reasonable jury could conclude that his administrative remedies were unavailable during the relevant time period within which he was to initiate a Request for Administrative Remedy related to the events of March 2003. Vega's filing of other non-related grievances underscores this finding. Additionally, there is insufficient proof in the record for a fair-minded jury to conclude Vega's interpretation of Corrections Counselor Cunningham's referral to file a tort claim to obtain monetary damages against defendants created a "special circumstance" which impaired Vega's access or ability to use the Administrative Remedies Program. Vega could have filed a grievance in addition to his tort claim. Vega does not suggest Counselor Cunningham, or anyone else, advised him otherwise. The BOP's Administrative Remedy Program did not preclude Plaintiff from filing a grievance addressing the same issues in his tort claim. The fact that Vega did not know he had to exhaust his administrative remedies via the BOP's grievance process in order to satisfactorily comply with the requirements of the PLRA is irrelevant as his ignorance cannot be attributed to defendants or perceived as interference.

Defendants have met their burden of showing that Plaintiff failed to exhaust his available administrative remedies before filing his complaint.  Consequently, we will grant defendants' motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies.

We will issue an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: November 4, 2005

-24-

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
JOSE VEGA,                      :
                                :
      Plaintiff                 :
                                :   CIVIL NO. 1:CV-04-2398
      vs.                       :
                                :   (Judge Caldwell)
UNITED STATES DEPARTMENT OF     :
JUSTICE, ET AL.,                :
                                :
      Defendants                :
```

*O R D E R*

AND NOW, this 4th day of November, 2005, for the reasons set forth in the accompanying memorandum, it is ordered that:

1.  Defendants' Motion for Summary Judgment (doc. 35) is GRANTED.

2.  The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff Vega.

3.  Plaintiff's Motion for a Jury Trial (doc. 48) is DENIED.

4.  Plaintiff's motion (doc. 43) for summary judgment is deemed withdrawn for failure to file a supporting brief.

5.  The Clerk of Court shall close this case.

/s/William W. Caldwell
William W. Caldwell
United States District Judge